```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION

STACYE LEE,                       §
                                  §
         Plaintiff,               §
                                  §
v.                                §    CIVIL ACTION NO. H-04-3473
                                  §
MOSTYN LAW FIRM,                  §
                                  §
         Defendant.               §
```

MEMORANDUM AND ORDER

Pending is Defendant Mostyn Law Firm's Motion for Summary Judgment (Document No. 29) and Motion to Strike Affidavit of Stacye Lee (Document No. 53).[1] After carefully considering the motions, response, reply, and the applicable law, the Court concludes as follows:

I. Background

Plaintiff Stacye Lee ("Plaintiff"), who is black, sues Defendant John Steven Mostyn, P.C. d/b/a The Mostyn Law Firm ("Defendant") for racial discrimination, a hostile work environment, and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.

---

[1] After careful consideration, Defendant's Motion to Strike Affidavit of Stacye Lee (Document No. 53) is GRANTED IN PART with respect to ¶¶ 24, 26, 27, 28, 38, and 41 of Plaintiff Stacye Lee's Affidavit (Document No. 48 ex. H). The motion is otherwise DENIED.

Specifically, Plaintiff alleges that she was subjected to a racially hostile and offensive work environment that consisted primarily of racially-oriented comments, that there was a wage differential between herself and similarly-situated white employees, and that she ultimately was terminated in retaliation for lodging with her supervisors "numerous complaints about the race-based maltreatment." *See* Document No. 21 ¶¶ 9, 24, 27.

In May, 2001, Defendant hired Plaintiff to work as a legal secretary.[2] *See* Document No. 48 ex. E at 2. Plaintiff was hired by Paralegal Rita Burks ("Burks"), who is white, while Managing Partner John Mostyn ("Mostyn"), who is white, was out of the office after the birth of his child. *See* id. ex. E at 2, ex. H ¶ 4. When Mostyn returned to the office, Plaintiff alleges that he went for weeks without speaking to her. *See* Document No. 21 ¶ 10. Mostyn then began using racial epithets and insults at times directed toward Plaintiff and at other times in her presence. In 2002, Plaintiff alleges that she asked Mostyn for time off to attend a family reunion. *See* Document No. 48 ex. A1 at 129, 178. Mostyn responded that "slaves did not get breaks and to go back to work," and he made a whipping noise. *See* id. ex. A1 at 129; ex. H ¶ 10. Plaintiff also alleges that Mostyn referred to her and her young

---

[2] Plaintiff was promoted to a paralegal assistant in February, 2002, after Managing Partner John Mostyn paid for her to complete paralegal school. *See* Document No. 48 ex. E at 2; ex. H ¶ 29. Throughout her employment, Plaintiff worked under the supervision of Mostyn and Paralegal Rita Burks. *See* id. ex. H ¶ 7.

children as monkeys.  Plaintiff alleges that Mostyn told her that he had watched a National Geographic show that indicated that black people were descendants of monkeys, and he then laughed and walked off.  *See* id. ex. A1 at 141-42.  Plaintiff also recounts an incident when her mother dropped Plaintiff's children off at the law firm, and as her children entered through the front door, Mostyn said, "Oh, here comes the little monkeys."  *See* id. ex. H ¶ 12.  Further, Plaintiff alleges that Mostyn referred to his African-American clients as "niggers" and as "black bitches," and one time he grabbed a file out of Plaintiff's hand and said, "Let me see this, nigger."  *See* id. ex. A1 at 161, 168, 172. Plaintiff's co-worker Debra Weakley avers that she personally heard Mostyn use the word "nigger," and that Mostyn "constantly made comments to Stacye Lee in front of myself and other people that were clearly racially derogatory."  *See* id. ex. G.  Mostyn repeatedly commented to Plaintiff about "your people," and talked about how black people eat watermelon and chicken.  *See* id. ex. A1 at 172-74; ex. G.

   Plaintiff alleges that she complained to Mostyn and Burks several times during her employment, "begging to be treated with equality and dignity."  *See* Document No. 48 at 6, ex. A1 at 180, ex. H ¶ 21.  Plaintiff began taking a tape recorder to work in an effort to memorialize Mostyn's racial comments, but to no avail. Id. ex. H ¶ 39.  Furthermore, Plaintiff alleges that she was paid

less than three white employees she claims were similarly-situated to herself--Lisa Prado ("Prado"), Erin Goss ("Goss"), and Christine Mehrmann ("Mehrmann"). *See* id. at 6. In December, 2003, Plaintiff was terminated, allegedly because of her poor performance, unauthorized absences from work, and her related deceit about the absence on December 5, 2003.

Defendant now moves for summary judgment and asserts that: (1) Plaintiff cannot establish a prima facie case of unlawful retaliation, hostile work environment, or race-based wage differential; and (2) even if Plaintiff makes a prima facie case on her claims, she cannot raise a fact issue that Defendant's legitimate reasons to discharge her were pretextual.

## II.   Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.

4

Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

III. <u>Discussion</u>

Title VII proscribes an employer from terminating or otherwise discriminating against any individual because of that individual's race.[3] 42 U.S.C. § 2000e-2(a)(1). The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff." <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004). Intentional discrimination can be established through either direct or circumstantial evidence. <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 219 (5th Cir. 2001). Because Plaintiff presents no direct evidence of discrimination, her claim is analyzed using the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973). <u>Id.</u> Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case of discrimination. <u>Id.</u>

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" <u>Id.</u> (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2748

---

[3] The same burden-shifting framework in Title VII cases applies to employment discrimination and retaliation claims brought under § 1981. *See* <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004).

6

(1993)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

A.  Retaliation

Plaintiff first contends that Defendant terminated her employment in retaliation for her internal complaints to Burks and Mostyn, her two supervisors, about racial mistreatment.[4] Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]. . . ." 42 U.S.C. § 2000e-3(a). A plaintiff must first establish a prima facie case of retaliation. The burden of production then shifts to the defendant to demonstrate a legitimate, non-retaliatory reason for the adverse employment action. Long v. Eastfield Coll., 88 F.3d 300, 304-05

---

[4] Plaintiff in her deposition does not recall the exact dates of her complaints to Burks and Mostyn, but she testified that she "made several complaints during -- during the duration of my employment." See Document No. 48 ex. A1 at 179.

7

(5th Cir. 1996). If the defendant produces such evidence, "the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff." Id. at 305; *see also* Shannon v. Henderson, 275 F.3d 42, *3-*5 (5th Cir. Sept. 25, 2001) (per curium) (unpublished). To defeat a motion for summary judgment, a plaintiff must show that there is a "conflict in substantial evidence" on the ultimate issue of whether, "but for" the protected activity, the adverse employment action would not have occurred. Id. at 308 (quoting Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996)(en banc)).

1. Plaintiff's Prima Facie Case

To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *See* Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004); Roberson, 373 F.3d at 655. Viewed in the light most favorable to Plaintiff, there is summary judgment evidence that Plaintiff engaged in a statutorily protected activity when she complained on several occasions to her supervisors, Burks and Mostyn, about Mostyn's racial comments; that Plaintiff was terminated; and that Mostyn was the ultimate decisionmaker in Plaintiff's termination. *See* Document No. 48 ex. A1 at 131-32,

179-80; ex. F at 2.  This evidence is sufficient to establish Plaintiff's prima facie case of retaliation.

    2.   <u>Defendant's Legitimate, Non-Discriminatory Reason</u>

Defendant asserts as its legitimate, non-discriminatory reason for Plaintiff's termination that Plaintiff had problems with her attitude and attendance, and finally was "terminated due to her unauthorized absence on December 5, 2003 and her failure to tell the truth regarding that absence." *See* Document No. 52 ¶ 11. First, Defendant produces summary judgment evidence that in the months before Plaintiff's termination, Mostyn began receiving complaints about Plaintiff's poor work performance and declining attitude--specifically, that Plaintiff had performed tasks incorrectly, left tasks unfinished, and made it seem like she was in the office when she actually was gone. *See* Document No. 29 ex. A at 97, 172, 180-83.  The Fifth Circuit has found that "[p]oor work performance is a legitimate, non-discriminatory reason for discharge." *See* <u>Perez v. Region 20 Educ. Serv. Ctr.</u>, 307 F.3d 318, 326 (5th Cir. 2002).  Defendant asserts that Plaintiff was ultimately discharged, however, because of an incident on December 5, 2003, when Plaintiff left work without authorization, told no fewer than four different versions of her whereabouts that day to various employees, falsified her time sheet, and misused

firm resources.[5] See id. ex. A at 122, 173-78; exs. C at 3-4, D, E at 1, F, and G. Mostyn testified and averred to the following: that he and three other employees investigated Plaintiff's actions and verified her co-workers' statements after Plaintiff returned to work on December 5th; that he ultimately "concluded that Ms. Lee's unauthorized absence, misuse of Firm resources and misrepresentations regarding the incident were sufficiently serious to warrant termination"; and that he directed Richard Paxton, an attorney with the firm, to terminate Plaintiff's employment the

---

[5] Defendant provides the affidavits of three employees who recount the conflicting stories that Plaintiff told them about her whereabouts on December 5, 2003. See Document No. 29 exs. C, D, and F. In her affidavit, Burks describes the events of December 5th as follows:

> On December 5, 2003, I discovered that Ms. Lee signed out on the Firm's sign in/out sheet at 11:50am. I was informed by Diana Hinojosa (receptionist) that Ms. Lee said that she was going to an attorney's office to perform a document inspection. There was no document review scheduled for that day. . . . When I questioned Ms. Lee regarding her absence from the office, she claimed that she had been to the courthouse. Upon further questioning, Ms. Lee said that she went to traffic court. I began to investigate the details of Ms. Lee's unauthorized absence after Alex Infante, office assistant, asked me what file to charge for the mileage incurred by Ms. Lee. I discovered that Ms. Lee told Mr. Infante that I was driving Ms. Lee to the office of an attorney to perform a document review and that I wanted Mr. Infante to transport Ms. Lee back to the office when the assignment was completed. . . . According to Ms. Hinojosa, Ms. Lee changed the sign in/out sheet after Ms. Hinojosa told her that I inquired about Ms. Lee's absence.

Document No. 29 ex. C at 2-3.

next working day, on December 8, 2003, when Mostyn was away on business.  *See* Document No. 29 ex. A at 172-78; Document No. 48 ex. F at 2.  This explanation, if believed, constitutes a legitimate, non-discriminatory reason for an employee's discharge.  *See, e.g.*, Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) ("An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination").  Defendant has therefore satisfied its burden of production.

### 3. Plaintiff's Burden to Show Evidence of Pretext

At this point, the question is whether Plaintiff has raised a genuine issue of material fact regarding the ultimate question of whether she would have been discharged "but for" the complaints she made to Mostyn and Burks about Mostyn's racial harassment of her. Plaintiff's sole argument on this point is that Defendant's reasons for her termination are pretextual because Defendant has "changed its course" by offering different accounts of its reasons for terminating Plaintiff, and that "[t]he oft-changing and ever evolving reasons offered by Defendant for Ms. Lee's termination is more than sufficient for a jury to find pretext and in favor of Ms. Lee."  *See* Document No. 48 at 11-12.  Specifically, when Plaintiff was terminated on December 8, 2003, Plaintiff testified that Richard Paxton told her that she was being terminated because she

11

had taken unauthorized time off during the Thanksgiving holiday.[6] *See* id. ex. A1 at 271.  A few weeks later, on December 30, 2003, Mostyn stated in a letter to the Texas Workforce Commission that Plaintiff was terminated "due to unauthorized absence for [sic] work and related issues including unauthorized use of personnel, incurring unauthorized personal expense, and falsifying time records."  *See* id. ex. B at 1.  Then, in February, 2004, Mostyn averred in his affidavit that Plaintiff was terminated for her unauthorized absence, misuse of resources, and misrepresentations. *See* id. ex. F at 2.

Contrary to Plaintiff's assertion that Defendant has been inconsistent regarding its reasons for terminating Plaintiff, the summary judgment record reflects that, in the two years between Plaintiff's termination in December, 2003, and the present, Defendant has maintained that Plaintiff was terminated primarily for her conduct on December 5, 2003, but also for her increasingly poor performance and declining attitude and her allegedly unauthorized absence from work during the Thanksgiving holidays in 2003.  The fact that Defendant may have had several cumulative reasons for terminating Plaintiff--reasons that Defendant has consistently asserted and has substantiated with ample summary

---

[6] Defendant continues to assert that Plaintiff was terminated in part because she took unauthorized time off during the Thanksgiving holiday in November, 2003.  *See* Document No. 29 at 10-11; exs. C, D, and I.

judgment evidence--does not satisfy Plaintiff's burden of offering some *evidence* that permits an inference that Defendant's proferred reasons for her termination were a pretext for discrimination.[7]

In sum, Plaintiff has failed to create so much as a fact issue that Defendant retaliated by discharging her after she engaged in a protected activity by complaining to Burks and Mostyn about Mostyn's racial comments.[8] Defendant has provided substantial summary judgment evidence that Plaintiff was ultimately terminated because of her unauthorized absence from work on December 5, 2003, and her deceit surrounding that unauthorized absence. While Defendant has provided the affidavits of five employees who detail Plaintiff's conduct and contradictory statements on December 5th, Plaintiff has not refuted her co-workers' allegations or explained why she told conflicting versions of her whereabouts on that date. Further, the temporal proximity between Plaintiff's misconduct on

---

[7] In fact, Plaintiff agreed in her deposition that most of these proferred explanations--individually or in combination--would be grounds for termination. *See* Document No. 29 ex. B at 113 (agreeing that taking an unauthorized absence from work, misrepresenting her whereabouts to her employer, and falsifying time sheets would each be adequate grounds for termination).

[8] Plaintiff avers that Burks told her on October 8, 2003 that the law firm was assigning her extra work to make Plaintiff quit. *See* Document No. 48 ex. H ¶ 22. However, Defendant's decision to assign to Plaintiff more work and even its desire to see her leave the firm in late 2003 does not give rise to an inference that Defendant was retaliating against Plaintiff for having complained about her employment beginning in 2002. Nor is the statement evidence that Defendant's proferred non-retaliatory reason for Plaintiff's discharge--Plaintiff's conduct on December 5, 2003--was pretextual.

December 5th and her termination the next working day strongly suggests that Plaintiff's conduct on December 5, 2003, was the real reason for her termination.[9] Because Plaintiff has produced no *evidence* that would permit a reasonable fact-finder to infer that Defendant would not have terminated Plaintiff "but for" her protected conduct, Defendant's motion for summary judgment will be granted on Plaintiff's retaliation claim.

B.   Hostile Work Environment

Plaintiff also contends that she was subjected to a racially hostile work environment. To establish a prima facie case on this claim, Plaintiff must show: (1) that she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment, and (5) Defendant knew or should have known of the harassment, yet failed to take prompt remedial action.[10] Felton v. Polles, 315 F.3d

---

[9] This temporal proximity is all the more striking when compared to the lengthy time span between Plaintiff's complaints and her termination. Plaintiff testified at her deposition that she complained to Burks and Mostyn about Mostyn's racial comments sometime between December and June, 2002, and that she was discharged between 17 and 23 months later, in December, 2003. *See* Document No. 48 ex. A1 at 130, 132. Though Plaintiff testified that she complained on several occasions, she provided no other specific dates of these complaints, and none is shown to be in temporal proximity to the date that she was discharged.

[10] Because Plaintiff alleges that she was harassed by a supervisor with immediate or successively higher authority over

470, 483-84 (5th Cir. 2002). In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 371 (1993). For harassment to be actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). The Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283 (1998) (internal citation omitted). Rather, the environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. (applying the standard to sexual harassment case, but noting that the standards for racial and sexual harassment overlap).

Viewed in the light most favorable to Plaintiff, there is summary judgment evidence that Plaintiff was subjected to frequent,

---

her, she must satisfy only the first four elements. *See* Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353-54 (5th Cir. 2001).

unwelcome racial harassment from Mostyn in the form of racial slurs and demeaning remarks; that on occasion Plaintiff cried, and that she confided in her family and friends the abusive comments directed toward her; and that Plaintiff had begun searching for alternate employment "because this environment was too much for me to handle emotionally and physically."  This evidence, viewed in its totality and in the light most favorable to Plaintiff, is sufficient to raise an issue of material fact on whether Plaintiff was subjected to a racially hostile work environment that was both objectively and subjectively offensive, and that caused Plaintiff to sustain emotional harm.  Summary judgment must therefore be denied on this claim.

C.   Race-Based Pay Disparity

Plaintiff also sues for compensation discrimination under Title VII and § 1981.[11]  To establish a prima facie case of disparate pay based on race, Plaintiff must present evidence that: (1) she is a member of a protected class, and (2) she was paid less than persons outside of the protected class for work requiring substantially the same responsibilities.  Williams v. Galveston Indep. Sch. Dist., 256 F. Supp. 2d 668, 672 (S.D. Tex. 2003) (Kent,

---

[11] The same standard of proof applies under both statutes. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). The same facts underlie both causes of action, and they are therefore analyzed together.  See id.

J.) (citing <u>Uviedo v. Steves Sash & Door Co.</u>, 738 F.2d 1425, 1431 (5th Cir. 1984)). The Fifth Circuit has found that differing levels of experience is a non-discriminatory rationale for unequal salaries for employees performing the same job. *See* <u>Wallace v. Texas Tech Univ.</u>, 80 F.3d 1042, 1048-49 (5th Cir. 1996). Once the defendant articulates a non-discriminatory reason for disparate pay, then the plaintiff must show that the articulated reason is pretext. *See* <u>id.</u> at 1049.

1. <u>Plaintiff's Prima Facie Case</u>

It is undisputed that Plaintiff is a member of a protected class. Plaintiff identifies as her "comparators" three white employees--Prado, Goss, and Mehrmann--who held the same position as Plaintiff or performed job duties substantially similar to hers.[12] Plaintiff has produced summary judgment evidence that she earned a lower hourly rate than one of these comparators--Mehrmann,--who earned $18 per hour, while Plaintiff earned $16 per hour in 2003. *See* Document No. 48 ex. C. Plaintiff has therefore established a prima facie case of compensation discrimination under Title VII and/or § 1981.

---

[12] Burks avers that Prado, Goss, and Mehrmann performed job duties similar to Plaintiff's. *See* Document No. 48 ex. E at 2. Prado was a legal secretary and sole support for an attorney; Goss was a paralegal assistant primarily responsible for new client intake and also served as a personal assistant for Mostyn; and Mehrmann worked first as a scanner, and then took Goss's position when she left the firm in 2003. *See* <u>id.</u>

17

## 2. Defendant's Legitimate, Nondiscriminatory Explanation

Defendant first points out that two of Plaintiff's supposed comparators--Prado and Goss--were salaried employees who earned no overtime pay, while Plaintiff was an hourly employee eligible for overtime pay throughout her employment.[13] Regardless, it is undisputed that Plaintiff earned *more* money overall than Goss, Prado, and Mehrmann in 2002 and in 2003 through Plaintiff's last pay period that ended on December 11, 2003.[14]  *See* Document No. 29 ex. G. Defendant also argues that its legitimate, nondiscriminatory reason for paying Mehrmann a higher hourly rate than Plaintiff was because of Mehrmann's longer tenure and higher level of education.[15] Defendant's reasons, if believed, establish that the wage disparity between Plaintiff and her comparators was non-discriminatory.

---

[13] Burks avers that, although Plaintiff was initially given a salary when she began working, Plaintiff requested an hourly rate to earn overtime pay.  *See* Document No. 48 ex. E at 2.  Defendant complied with her request.

[14] Though Mehrmann had a higher hourly rate of pay than Plaintiff, Plaintiff earned more money than Mehrmann from January to December 11, 2003, due to Plaintiff's greater number of overtime hours.  *See* Document No. 29 ex. C.

[15] The summary judgment evidence establishes that Mehrmann held a bachelor's degree, while Plaintiff had taken some college classes and completed paralegal training while employed by Defendant.  *See* Document No. 52 ex. A at 1; Document No. 48 ex. A1 at 15-16, ex. H ¶ 29.  As for tenure, Mehrmann started with the firm in January, 1999; left the firm in June, 2000 to complete her bachelor's degree; and returned to the firm in September, 2002 after she graduated.  *See* Document No. 52 ex. A at 1.  Plaintiff worked for Defendant from May, 2001 to December, 2003.

### 3. Plaintiff's Burden to Show Evidence of Pretext

Plaintiff's "ultimate burden" is to prove intentional discrimination by producing evidence from which a reasonable jury could logically infer that her race was at least a motivating factor for the wage disparity between Plaintiff and her white comparators. *See* Rachid, 376 F.3d at 312. Plaintiff, however, has submitted no evidence to rebut or otherwise cast doubt on the truth of the legitimate, nondiscriminatory reasons advanced by Defendant for its compensation decisions, nor has Plaintiff presented any evidence from which a reasonable trier of fact could conclude that Plaintiff's race was a motivating factor in Defendant's compensation decisions. Because Plaintiff has failed to raise a genuine issue of material fact on the ultimate issue of whether race discrimination against Plaintiff was a factor in setting her compensation when compared to persons holding the same or substantially similar positions and performing substantially the same work, Defendant is entitled to summary judgment on Plaintiff's wage disparity claim.

## IV. Order

For the reasons set forth, it is hereby

ORDERED that Defendant Mostyn Law Firm's Motion for Summary Judgment (Document No. 29) is GRANTED IN PART. Plaintiff Stacye Lee's retaliation and race-based disparate pay claims under Title

VII and 42 U.S.C. § 1981 are DISMISSED on the merits. The motion is otherwise DENIED. Remaining for trial is Plaintiff's hostile work environment claim under Title VII and § 1981.

    The Clerk will enter this Order and send copies to all counsel of record.

    SIGNED at Houston, Texas on this 6th day of March, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE